IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2019

## MARTY HOLLAND v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hardeman County**
**No. 15-CR-187     J. Weber McCraw, Judge**

_____

### No. W2018-01517-CCA-R3-PC

_____

The Petitioner, Marty Holland, appeals from the Hardeman County Circuit Court's denial of post-conviction relief. On appeal, the Petitioner argues generally that "the post-conviction court erred in finding [the Petitioner] received effective assistance of counsel."[1] Based on the issues developed at the post-conviction hearing and the order of the post-conviction court, the issue presented is whether the Petitioner's guilty pleas are constitutionally infirm due to trial counsel's failure to investigate (1) a coerced confession; (2) the validity of a bench warrant concerning an unrelated offense; and (3) a search warrant executed at the Petitioner's home concerning an unrelated case. Following our review, we deem it necessary to remand this matter to the post-conviction court for a hearing to determine whether the Petitioner was advised of the circumstances attendant to entering a guilty plea based upon an agreement that his state sentence would be served concurrently to a previously imposed federal sentence. In all other respects, the judgment of the post-conviction court it affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed In Part; Remanded for Further Proceedings

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

J. Colin Rosser, Somerville, Tennessee, for the Petitioner, Marty Holland.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the Appellee, State of Tennessee.

--------

[1] By failing to precisely state the issue presented, the Petitioner runs the risk of waiver and dismissal of his appeal. See Tenn. R. App. P. 27 (4); State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995) (noting that issues that are "too broad in scope" are subject to waiver).

**OPINION**

On December 9, 2015, the Petitioner agreed to waive his right to prosecution by indictment or presentment and was charged by criminal information with attempted first-degree murder (count 1) and especially aggravated robbery (count 2).  See Tenn. Code Ann. § 40-3-103(b); see also § 39-12-101; id. §§ 39-13-202, -403.  On the same day, the Petitioner pleaded guilty to the above crimes (case number 15-CR-187).  At the top of the guilty plea colloquy, the parties explained that the Petitioner was also entering a guilty plea to one count of theft (case number 15-CR-15).  They further advised the court that the Petitioner was on "loan" from federal custody because, on September 2, 2015, the Petitioner had entered a guilty plea to an unrelated bank robbery.  The factual basis supporting the guilty plea was as follows:

> This is a two-count criminal information charging the defendant with an attempted first[-]degree murder and an especially aggravated robbery.  Had this matter gone to trial, Judge, the State would have introduced proof that on or about the 12th of December, 2014, investigators from the sheriff's department arrived at 6700 Highway 57, an assault, here in Hardeman County when the investigation of an especially aggravated robbery that had taken place earlier on that date.  The [Petitioner] – excuse me – the victim was Mr. Michael Druan who had been airlifted to the Regional Medical Center in Memphis as a result of the injuries.
>
> Two days later, the investigator had an opportunity to speak with the victim who stated that he had closed his restaurant on Friday night and left to drive home.  When he exited he – went to exit his car, he was struck in the right side of his face and of his head which knocked him back in the car.  He stated he saw what appeared to be a male subject wearing dark clothing, face covered by a mask, swinging a chrome tire tool striking him repeatedly and yelling, "I'm going to kill you[."]  The cash bag was taken subsequent to this assault.  The victim stated that the suspect's voice was familiar and was the voice of a former employee, the [Petitioner] in this matter.  He also said that the physical description of the individual that attacked him was consistent with the physical description of [the Petitioner].
>
> Basically, statements were received that could place [the Petitioner] at the scene and due to the attack on the victim and the theft, he was charged with an attempted first[-]degree murder and an especially aggravated robbery.

The Petitioner testified that he understood his charges and understood that neither of the instant offenses had been considered by a grand jury. His sentencing range for each offense was fifteen to twenty-five years and each offense carried a potential fine up to $50,000. The Petitioner understood that he was agreeing to a seventeen year sentence at 100%, with the possibility for "good time up to [fifteen] percent." The Petitioner testified that it was his intention to plead guilty and waive his right to trial by jury and to an appeal. The Petitioner was asked if he was satisfied with his attorney, to which he replied, "Yes, sir." He was specifically asked if he believed she had properly investigated his case, and he replied, "Yes, sir." The Petitioner said that he was not forced to plead guilty and that no one had promised him anything in exchange for his plea.

At the conclusion of the hearing, the trial court accepted the Petitioner's guilty pleas, finding that the Petitioner was "competent to enter these pleas, he does understand the consequence both directly and indirectly for entering such pleas. . . . [The Petitioner] has entered into these freely, voluntarily, and intelligently with the appropriate facts shown on each of these charges[.]" The court sentenced him to seventeen years at 100% for each count and aligned the sentences concurrently to one another and to the Petitioner's federal sentence and consecutively to the theft in case number 15-CR-15. The trial court imposed a $500 fine for each count and ordered restitution in the amount of $2,000 for the especially aggravated robbery.

On December 13, 2016, the Petitioner filed a pro se petition for post-conviction relief. The State correctly notes that the petition was not lodged within the one-year time limit for filing a petition for post-conviction relief; however, the State does not challenge the timeliness of the petition because it was mailed prior to the deadline, which entitled the Petitioner to the benefit of the prison mailbox rule. See Tenn. S. Ct. R. 28 § 2(G). The post-conviction court initially ordered the Petitioner to amend the petition, the Petitioner failed to timely respond, and the Petitioner moved the court to reconsider. The post-conviction court granted the Petitioner's motion, allowed him additional time to amend the petition, and it was eventually filed on March 21, 2017. On May 10, 2018, through appointed counsel, the Petitioner filed a second amended petition, arguing that trial counsel was ineffective in failing to investigate the factors of the case, that he entered into his guilty pleas without understanding the nature and consequences of the pleas, that his conviction was based on a coerced confession given to Captain Gregg Moore based on information provided to him by counsel, that his original plea offer was twelve years but later changed to seventeen years, and his conviction was based on evidence gained pursuant to an illegal search of his residence. On June 14, 2018, the State filed a response to the amended petition agreeing that the Petitioner was initially extended a more favorable plea offer; however, the State denied the Petitioner's allegations in all other respects.

- 3 -

At the August 9, 2018 post-conviction hearing, trial counsel, a twenty-eight-year veteran with the Public Defender's office, testified that she was appointed to represent the Petitioner. She recalled entering into negotiations regarding a plea agreement. Because the Petitioner repeatedly said, "I'm going to kill you" while striking the victim, the charge was elevated to attempted first-degree murder. Trial counsel originally received a "better offer," which she said the Petitioner declined. Trial counsel said after the first offer, the Petitioner was taken into federal custody and when he returned, she continued negotiating, but "the State gave a new offer and it was not as low as the first offer." Based on the victim's statements and the surrounding circumstances, trial counsel believed that attempted first-degree murder and especially aggravated robbery could be presented and proved. Trial counsel said she and another attorney from the Public Defender's office, spoke with the Petitioner regarding the charges "many" times. She recalled meeting him "several" times in the jury room, which was not an uncommon place for her to meet clients. She said that at the Petitioner's plea hearing, he testified that he had discussed the case with trial counsel and understood what was going on. He was also aware that his offenses carried 100% release eligibility.

Trial counsel was unaware of any "coerced confessions" made by the Petitioner or any "unlawful arrests." To her knowledge, the Petitioner had been arrested on a bank robbery out of McNairy County, and she was later appointed to the instant case. She explored the possibility of bringing the attempted first-degree murder charge down to aggravated assault, but she said the State would not entertain that offer. She said she fully explained the offer to the Petitioner. Asked if the Petitioner offered his plea voluntarily, trial counsel responded, "[y]es. He may not have liked it, but he did his plea. It's not uncommon for people accused of crimes not to be happy about their offer but – and I never force anyone to take an offer." Trial counsel testified that she properly investigated the Petitioner's case and was able to negotiate the charges to run concurrently to the Petitioner's federal sentence.

On cross-examination, trial counsel testified that she visited with the Petitioner on "five or six occasions." She recalled discussing the nature of the plea with the Petitioner, and explained plea negotiations as follows:

> [He was offered] fifteen at a [100%] which with good behavior, I would have explained he would have been able to possibly get [15%] off of that so that's probably where the twelve in his mind although that would be speculation on my part, but he was offered fifteen, then it was changed to seventeen, and I believe [the Prosecutor] at some point did, in fact, state that if he wanted to keep playing cat-and-mouse games about this matter that he would offer us something consecutive [to the federal case]. So – and his sentence range, I believe was, fifteen to twenty-five.

Trial counsel did not recall any statement made regarding exploring options for charging the Petitioner's girlfriend if the Petitioner did not take the offer. Trial counsel said she was not concerned with the Petitioner's girlfriend because the Petitioner's girlfriend was not her client. Trial counsel provided the Petitioner with discovery including the Petitioner's federal discovery and a copy of his affidavit of complaint. She explained however, that these charges were based on criminal information, so the Petitioner was not yet entitled to full discovery. During her investigation, trial counsel never discovered an illegal search based on a warrant that was signed after the search of the Petitioner's house. She explained,

> most of the searches and anything incident to that were a result of the bank robbery arrest and since this – like I stated, we were in the General Sessions level and then we went to the Circuit level with an information. Those were not issues that had developed yet. If he had wanted to proceed to trial and argue those issues, we would have been happy to.

Captain Greg Moore with the Hardeman County Sheriff's Department testified that he took a statement from the Petitioner in 2015. He said he never made an offer to the Petitioner regarding his sentence. On cross-examination, asked "did [the Petitioner] write you a letter trying to cooperate in giving a confession with the understanding that he would – if cooperating, he could get ten to twelve years instead of the sentence he received?" Captain Moore said he did not "recall any such letter." Captain Moore was one of the initial officers present during the search of the Defendant's home. Asked if officers had a signed warrant when conducting the initial search, Captain Moore explained, "[a]s I recall, it would have been a McNairy County – we were assisting McNairy County in their investigation at that point in time for the bank robbery, but yes, there was a search warrant executed." The Petitioner then presented a search warrant, which Captain Moore identified, indicating that it was signed at 8:15 p.m. even though the search was executed hours prior.[2] Captain Moore said it appeared to be the same warrant as the one issued, but he had not had a chance to review the document and that was the first time he had seen the warrant since the initial search. He did not recall what evidence was found during the search. On redirect, Captain Moore confirmed that the search warrant presented by the Petitioner stated, "residence of Tracy Harry and [] Marty Holland suspected residence and mobile home, law enforcement currently at the residence[.]" Captain Moore recalled the initial search being pursuant to the bank robbery and a warrant from McNairy County, but he said when other evidence was discovered relating to separate offenses, Chief Davis obtained an additional, separate warrant.

---

[2] There is no search warrant included in the appellate record.

The Petitioner testified that he was arrested in January 2015. His first attorney had a "conflict of interest," and trial counsel was appointed "a couple of months later." Before he was taken into federal custody, the Petitioner met with trial counsel "three or four times" and received two letters from her. He acknowledged that one of the letters discussed the State's first offer of fifteen years. The Petitioner said while he was in federal custody, trial counsel "talked to nobody, had done nothing, on [his] behalf at least." The Petitioner said he was originally placed in jail in Hardeman County on a bench warrant for failure to appear in court for his theft charge. According to him, "The DA stood up in court and said I hadn't been issued – he never called and notified me of a court date. . . ." At the time, he was on bail with First Choice Bail Bondsman, whom the Petitioner claimed was also unware of the court date.

The Petitioner testified that Captain Moore, McNairy County officers, and the Federal Bureau of Investigation came to his home to conduct a search. Officers asked if they could "go in the house," but the Petitioner said "no." The Petitioner said Captain Moore told him a search warrant was "on the way" and told officers to take the Petitioner to "county jail because there was a bench warrant for my arrest." The Petitioner testified that he requested a copy of the search warrant and the bench warrant, but he was never given them. Eventually, the Petitioner said he obtained a copy of the search warrant from another attorney handling his unrelated charges in Tipton County. The Petitioner claimed that the search warrant was not signed until after officers had already executed the search of his home. He said the only people able to give the officers permission to search would have been the Petitioner or his landlord. The Petitioner's girlfriend would have been unable to consent to the search because she did not live at the home.

According to the Petitioner, at one point during plea negotiations, he was told he would receive a twelve-year sentence. He said the offer then changed to fifteen years on the attempted murder charge and twelve years on the aggravated robbery charge. Asked why the offer changed, the Petitioner explained that the "DA felt like that I had threatened the victim which was never the case." The Petitioner said he requested the victim's medical records, but trial counsel never provided him with a copy. The Petitioner testified that he was incarcerated for eleven months awaiting disposition of this case, which was "plenty of time" for trial counsel to obtain copies of the victim's medical records, the search warrant, and the bench warrant. Asked what his understanding of his plea offer was, the Petitioner responded,

When I took the plea, [trial counsel] asked – I asked her about – she said that was the best I could do and if I went to trial I would get more than that. And I asked her about the validity of the search warrant and the bench warrant and she said they were fine. So I took her at her word. I didn't know any different until I went to Tipton County and got a copy – and the

- 6 -

search warrant was then provided for me in my packet that I got. That's when I first knew something was wrong or that I felt like something was wrong. And then I still didn't know anything until I got to TDOC facility, Turney Center, and gotten to where I could go to a law library and talk to somebody else and show them everything.

The Petitioner said he gave Captain Moore a confession because he was concerned about his girlfriend and his children and he believed trial counsel was looking out for his "best interest." He also feared a worse sentence if he did not cooperate.

On cross-examination, the Petitioner admitted that the first offer trial counsel presented to him was "fifteen year[s] . . . on [the] attempted first[-]degree murder." The State then presented the original plea offer sheet to the Petitioner.[3] The Petitioner acknowledged that the original plea offer was made in January 2015; another offer was extended in December 2015, which was seventeen years' to be served concurrently to the Petitioner's federal sentence.

After the hearing, the post-conviction court took the matter under advisement, and on August 16, 2018, entered a written order denying relief reasoning, in pertinent part, as follows:

> At the plea hearing, the [Petitioner] testified under oath. He testified that he went over the plea form, the waiver of a trial and waiver of appeal forms with his attorney and signed them. He testified he understood what he was doing. The plea form indicated that he would be facing seventeen years at eighty-five percent (85%) that these sentences would run concurrently with each other and with the federal charges.
>
> He was informed that his sentence would not be eligible for probation.
>
> The [Petitioner] was asked if he was satisfied with the representation of [trial counsel] and he stated he was. He testified he had enough time to meet with his attorney and discuss the case. The [Petitioner] testified that no one had forced him to enter this plea of guilty, and that he did not have any questions about the proceeding.
>
> Before the plea proceedings, [trial counsel] went over the information with [the P]etitioner several times.

---

[3] The original plea offer sheet is not in the record.

[The] Petitioner stated that no one forced him to plead guilty.

The Court finds that the [Petitioner] actually understood the significance and consequences of the particular decision to plea [sic] guilty and the decision was not coerced. The [Petitioner] was fully aware of the direct consequences of the plea, including the possibility of the sentence actually received. He was informed at the plea hearing of the sentence.

The Court accredits the testimony of [trial counsel].

The Court finds that she provided adequate assistance; she met with [the P]etitioner and discussed the case, including possible sentences.

[The] Petitioner failed to show any deficient performance by [trial counsel] or that she [sic] was prejudiced. . . .

. . . .

The Court finds that the [P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210. The [P]etitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The [P]etitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The [P]etitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. The [P]etitioner has not shown that he was incapable of defending himself in a court of law.

It is from this order that the Petitioner now timely appeals.

## ANALYSIS

The Petitioner argues that but for trial counsel's failure to investigate (1) a coerced confession; (2) the validity of a bench warrant concerning an unrelated offense; and (3) a search warrant executed at the Petitioner's home concerning an unrelated case, he would not have entered his guilty pleas. The State counters, and we agree, that the post-conviction court properly denied relief. In reaching our conclusion, we are guided by the following well-established law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is

void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (citations and internal quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Felts, 354 S.W.3d at 276 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim" and "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697). This court reviews a claim of ineffective assistance of counsel, which is a mixed question of law and fact, under a de novo standard with no presumption of correctness. Smith v. State, 357 S.W.3d 322, 336 (Tenn. 2011).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). When ineffective assistance of counsel is alleged in the context of a guilty plea, the prejudice analysis

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Grindstaff, 297 S.W.3d at 216-17. The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977), superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

As relevant to the issues herein, the Tennessee Supreme Court has held that "[f]ailure to conduct a reasonable investigation constitutes deficient performance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999).

Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are

- 10 -

raised" so that the government is put to its proof. . . . And, of course, the duty to investigate also requires adequate legal research.

Baxter, 523 S.W.2d at 932-33 (quoting United States v. DeCoster, 487 F.2d 1197, 1203-04 (D.C. Cir. 1973)). In any ineffective assistance of counsel case, however, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Burns, 6 S.W.3d at 462 (quoting Strickland, 466 U.S. at 691).

The Petitioner specifically asserts that his "Fourth Amendment rights were violated when the Hardeman County Sheriff's Office arrested and searched his residence hours before the search warrant was signed by a judge at 8:15 p.m. on January 14, 2015, and this violation should have been discovered by [trial counsel] had she conducted an investigation of his case." The Petitioner further claims he entered his pleas "because he trusted [trial counsel]'s advice that the search warrant was valid." Here, we agree with the State, and conclude that this issue is waived for failure to present the search warrant in question to the trial court or include it in the record on appeal. This court is unable to properly address the Petitioner's allegation of trial counsel's deficiency as it pertains to this claim without a copy of the search warrant in the appellate record. See Tenn. R. App. P. 24(b). In addition, the post-conviction court noted in its order denying relief, "no search warrant or other testimony was presented regarding a defect in the search warrant."

Waiver notwithstanding, trial counsel and Captain Moore testified that the initial search was executed based on an unrelated charge against the Petitioner, not the instant offenses of conviction. Trial counsel testified that she never discovered an illegal search warrant, that "those were not issues that had developed yet," and had the Petitioner "wanted to proceed to trial and argue those issues, [she] would have been happy to." The post-conviction court accredited trial counsel's testimony, and the Petitioner is not entitled to relief on this issue.

In regard to the Petitioner's remaining contention, that his guilty pleas were unknowing and involuntary based on trial counsel's failure to properly investigate a coerced confession and the validity of a bench warrant concerning an unrelated offense, trial counsel and Captain Moore testified that they were unfamiliar with any coercion alleged by the Petitioner. Trial counsel specifically stated that she checked her file and that any such statement would have been given prior to her representation of the Petitioner. She was similarly unfamiliar with any alleged "unlawful arrest of [the Petitioner] on [January 14]." Captain Moore testified that he took a statement from the Petitioner; however, he denied extending an offer to the Petitioner if he cooperated or receiving a letter from the Petitioner. The Petitioner testified that he was initially arrested

on a bench warrant, a copy of which he was not provided in discovery. The Petitioner additionally testified regarding alleged deficiencies in the search warrant of his home including the fact that it was signed several hours after the actual search of his home. Finally, the Petitioner testified that he confessed to Captain Moore because he was "more concerned about his wife – girlfriend and [his] children" and did not believe his attorney was acting in his best interest at the time of his guilty plea. The post-conviction court determined, and we agree, that the Petitioner failed to establish the factual allegations in his petition by clear and convincing evidence. Moreover, the record is devoid of testimony establishing that but for the alleged deficiency of counsel, the Petitioner would not have entered a guilty plea. The Petitioner is not entitled to relief.

We are constrained to note that the state judgments in this case show that the Petitioner's effective seventeen-year sentence for attempted especially aggravated robbery and attempted murder are to be served concurrently with a previously imposed federal sentence for bank robbery. There are two ways in which the federal sentence may be made concurrent with the state sentence (1) the Bureau of Prisons ("BOP") may designate the state prison as the place of confinement for the federal term of imprisonment or (2) the BOP, in its discretion, may accept a state prisoner into federal custody when state officials offer to transfer a prisoner who has not fulfilled the state term of imprisonment. Faulkner v. State, 226 S.W.3d 358, 363-64 (Tenn. 2007). Although the record contains the judgment from the federal bank robbery case, it does not include the sentence, the conditions imposed, or a designation that it be served concurrently to any future state sentence. We understand that the Petitioner was "on loan" from the federal authorities when he entered his state guilty plea; but, there was no testimony at the guilty-plea hearing or the post-conviction hearing as to how the Petitioner settled his federal case, the extent to which there was coordination between federal and state counsel to resolve the matters, or whether the federal court agreed to allow the Petitioner to serve his anticipated state sentence in a federal facility. While serving a concurrent state and federal sentence is not prohibited by our law, see Tenn. R. Crim. P. 32(c)(2)(B), it has been roundly criticized by this court for its pitfalls. See Bernard Frazier v. State, No. W2013-00187-CCA-R3-PC, 2014 WL 1410285, at *7 (Tenn. Crim. App. Apr. 10, 2014) (petitioner's guilty plea to concurrent federal and state sentence was unknowingly and involuntarily entered because there was no guarantee that upon completion of his state sentence he would not be taken into federal custody and required to serve his entire federal sentence which was contrary to the intent of the plea agreement); see also Joseph T. Faulkner v. State, No. W1999-00223-CCA-R3-PC, 2000 WL 1671470 (Tenn. Crim. App. Oct. 17, 2000); Derrick E. Means v. State, No. 02C01-9707-CR-00248, 1998 WL 470447 (Tenn. Crim. App. Aug. 13, 1998); James L. Crawford v. State, No. E2010-00425-CCA-R3-PC, 2011 WL 1745187 (Tenn. Crim. App. May 9, 2011), perm. app. denied (Tenn. Aug. 25, 2011); Andre Wilson v. State, No. W2001-02442-CCA-R3-PC, 2002 WL 818260 (Tenn. Crim. App. Apr. 17, 2002), perm. app.

denied (Tenn. Oct. 7, 2002) (Hayes, J., dissenting); Lucious Allen v. State, No. W2000-02320-CCA-OT-PC, 2001 WL 1381360 (Tenn. Crim. App. Nov. 2, 2001).  Accordingly, we must remand this matter to the post-conviction court for a hearing to determine whether the Petitioner was advised of the consequences of entering a guilty plea based upon the agreement that his state sentence be served concurrently with a prior federal sentence.

## **CONCLUSION**

Based on the foregoing reasoning and analysis, we remand this matter for a hearing limited to the issue of whether the Petitioner was aware of the circumstances of entering a guilty plea conditioned upon concurrent state and federal sentences.  In all other respects, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE